UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RESTAURANT.COM, INC, a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>STEVE SAVAD, an individual residing in New York<br><br>        Defendant. | No. 08 CV 2978<br><br>Honorable Judge Aspen<br>Magistrate Judge Valdez |

## SAVAD'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS

### INTRODUCTION

In its Response to Savad's Motion to Dismiss ("Response"), Restaurant.com ("RDC") argues that Savad breached his employment contract and that the restrictive covenant at issue is enforceable. RDC's first argument is premised on the illogical position that a mere unsuccessful <u>attempt</u> to persuade employees to leave a company means and is exactly the same thing as the employees actually leaving the company. RDC's second argument is based on the premises that this Court is bound by a certain 16-year old state appellate court case and that RDC has a protected interest in maintaining a stable work force.

RDC is wrong on both issues. The contract at issue prohibits Savad from persuading employees to actually leave RDC, which he obviously did not do since the employees in question remain employed by RDC. Moreover, this Court is not bound by the old state appellate court upon which RDC relies especially considering that the only two federal cases that recently analyzed that case rejected its holding in full or in part and have followed the majority of Illinois cases which do not recognize maintaining a stable work force as a protected interest that could give rise to injunctive relief.

Because Savad never persuaded any RDC employees to leave RDC and because RDC never alleged that he ever solicited any of its customers, Savad has not breached his employment agreement according to the very allegations contained in RDC's own Complaint. Moreover, Savad could not have breached the covenant prohibiting him from persuading RDC employees to leave RDC because such a provision constitutes an unlawful restraint of trade under Illinois law and is therefore unenforceable in any event. For these reasons, and as discussed in more detail below, RDC's Complaint should be dismissed in its entirety.

## ARGUMENT

I.  **RDC FAILED TO ALLEGE A BREACH OF CONTRACT BECAUSE THE RESTRICTIVE COVENANT AT ISSUE DOES NOT PROHIBIT SAVAD FROM MERELY SOLICITING RDC'S EMPLOYEES**

Faced with plain and unambiguous language in the employment contract at issue that clearly dooms its claim for breach of contract, RDC resorts to a strategy of trying to convince this Court that the critical words in the contract do not contain their plain and ordinary meaning but instead mean something altogether different. Although admitting that Savad did not "hire" any of its employees, RDC asserts in its Response that Savad breached the contract by "entic[ing] away" from RDC two of its employees and/or by "persuad[ing]" these employees "to terminate their relationship with [RDC]." (Response at 3-4). However, RDC's contention makes no sense because, in its Complaint, RDC specifically alleges that one of the employees in question actually "told Savad that he was not interested in joining him" (Complaint, ¶17), and that the other also "declined Savad's solicitation" (Complaint, ¶18). Thus, Savad did <u>not</u> persuade these employees to leave RDC because they remain employed by RDC. To accept RDC's faulty interpretation of the contract would lead to the illogical conclusion that RDC's employees could somehow be "entice[d] away" from RDC and could be "persuad[ed] . . . to

terminate their relationship with [RDC]" and yet remarkably continue to remain in the employ of RDC. The agreement cannot now be so reformed.

The contract, which was drafted by RDC, clearly prohibits different types of activity depending on whether customers or employees are involved. As to customers, in Section 7(c), RDC drafted the contract to preclude Savad from "solicit[ing]," whether or not his attempts at solicitation are successful. In other words, the mere act of soliciting <u>customers</u> violates the contract. As to <u>employees</u>, RDC chose entirely different language. If RDC wanted to preclude solicitation of employees, it could have expressly used that term as it had with respect to customers. Instead, RDC chose entirely different language concerning employees. Excluding the word solicit altogether in that provision, the contract only provides that Savad (1) may not "hire" RDC's employees, (2) may not "entice away" employees from RDC, and (3) may not "persuade" RDC employees "to terminate their relationship with [RDC]." It is well-settled that "when parties to the same contract use such different language to address parallel issues . . . , it is reasonable to infer that they intend this language to mean different things." *Taracorp, Inc. v. NL Industries, Inc.*, 73 F.3d 738, 744 (7th Cir. 1996). Thus, RDC's argument that the language regarding prohibited conduct as to customers and the different language regarding prohibited conduct regarding employees are somehow synonymous is contrary to well-established Seventh Circuit law.

Moreover, if Savad had done any of these three things prohibited by the contract regarding employees, the employees in question would necessarily, by definition, no longer be working for RDC. However, Since the two employees in question are still working for RDC, as alleged by RDC itself in its Complaint, Savad did not "hire" them, nor did he entice them away

from RDC or persuade them to terminate their relationship with RDC. Therefore, by definition, Savad did not breach, and could not have breached, the contract.

RDC now wants to rewrite the contract wishing that it said Savad may not "<u>attempt</u> to hire" or "<u>attempt</u> to entice away" or "<u>attempt</u> to persuade RDC employees to terminate their relationship with RDC." Such wishful thinking by RDC will not advance its cause however because the word "attempt" does not appear anywhere in the provision at issue and the contract must be taken as actually written for purposes of the instant motion. Even if the contract were ambiguous on this point (which it is not), any ambiguities would have to be construed against RDC since it is the one who drafted the contract. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) ("[A]ny ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision.").

RDC's reliance on dictionary definitions is also misplaced as the definitions cited actually undermine RDC's illogical argument. RDC cites a dictionary as defining "persuade" to mean "<u>to move</u> by argument, entreaty, or expostulation <u>to a belief, position or course of action</u>." (Response at 4) (emphasis added). However, according to RDC's own allegations, Savad did not move the employees to take the alleged intended course of action because he did not persuade them to leave RDC. Likewise, RDC uses a definition of "entice" (which is really not on point since the term in the contract is "entice <u>away</u>") as meaning "<u>to attract</u> artfully or adroitly or by arousing hope or desire." (Response at 4) (emphasis added). Again, even by RDC's definition Savad did not entice away the employees because he did not "attract" them to his alleged venture nor did the employees respond by expressing any "desire" to join him or leave RDC. To the contrary, according to RDC's own Complaint, the employees in question stated that they were "not interested in joining him" and that they were "declin[ing] Savad's solicitation."

4

(Complaint, ¶¶17-18). Thus, even by the definitions chosen by RDC, Savad did not persuade the employees to leave RDC or otherwise entice them away from RDC. As such, Savad did not breach, and in fact could not have breached, the "anti-piracy" portion of the provision at issue.

RDC's last argument on the issue of breach is that it need not prove a breach of contract in order to obtain injunctive relief because "[a] party seeking an injunction need not wait until an injury occurs." (Response at 4) (citing *In re Marriage of Weber*, 182 Ill. App. 3d 212, 220, 537 N.E.2d 1024, 1029 (1989)). RDC's analysis is flawed and its reliance on *Weber* is misplaced. First, RDC refers to standards to be used on a petition for a preliminary injunction whereas the instant motion is a motion to dismiss for failure to adequately allege the requisite elements of RDC's breach of contract claim. Second, RDC is confusing the contract element of injury with the contract element of breach. "To state a cause of action for breach of contract a plaintiff must show (1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) <u>the breach of the contract by defendant</u>; and (4) a resulting injury to plaintiff. A defendant's failure to comply with the duty imposed by the contract gives rise to the breach." *Hickox v. Bell*, 195 Ill. App. 3d 976, 992, 552 N.E.2d 1133, 1143 (1990) (citations omitted, emphasis added). It is axiomatic that there may be a breach of contract with no resulting injury. Here, on the instant motion, RDC must demonstrate that it has alleged a breach of the contract (*i.e.,* a failure by Savad to comply with a duty imposed by the contract), regardless of the issue of injury or damages and regardless of what it may be required to show on a motion for issuance of a preliminary injunction.[1] Since RDC has failed to allege this requisite element, its contract

---

[1] Ultimately, RDC would also have to demonstrate the element of breach if and when if moves for the issuance of a preliminary injunction -- even if it need not show injury -- because it must prove a likelihood of success on the merits of its contract claim, which necessarily requires a showing of breach. However, on this motion to dismiss, the only inquiry is whether RDC adequately pled all of the requisite elements of a claim for breach of contract.

claim must be dismissed. Interestingly, the mere fact that RDC makes this argument suggests that even RDC may be implicitly conceding that it has not alleged and can not allege an actual breach of the contract by Savad.

Because the very facts that RDC pled in its Complaint combined with the express language of the contract attached to the Complaint reveal that Savad did not breach the contract as a matter of law, RDC has failed to state a claim upon which relief may be granted. Accordingly, Savad's motion should be granted and RDC's complaint should be dismissed.

**II. RDC FAILED TO ALLEGE A BREACH OF CONTRACT FOR THE ADDITIONAL REASON THAT THE RESTRICTIVE COVENANT AT ISSUE IS UNENFORCEABLE AS A MATTER OF LAW**

In addition to the fact that Savad did not do anything prohibited by the contract (as discussed above) and therefore did not breach the contract, RDC also fails to state a claim for breach of contract because the restrictive covenant at issue is unenforceable as a matter of Illinois law. As discussed in Savad's Opening Memorandum, the only reported federal case addressing the issue, *Unisource Worldwide, Inc. v. Carrara*, 244 F.Supp.2d 977 (C.D. Ill. 2003), held that maintaining a stable work force is not one of the two recognized interests that may be protected by a restrictive covenant under Illinois law. Therefore, the non-recruitment provision in the contract at issue is simply unenforceable.

In its Response, RDC attempts to counter the holding of *Unisource*, by misstating the holdings of certain cases, misapplying the holdings of others and ignoring important allegations that it made in its own Complaint. RDC begins by misstating the holding in *Outsource International, Inc. v. Barton*, 192 F.3d 662 (7th Cir. 1999). In its Response, RDC refers to Savad's statement that "non-recruitment covenants constitute an invalid restraint on trade" and then cites *Outsource* for the proposition that "Illinois law holds that such covenants are in fact enforceable if they protect a legitimate business interest." (Response at 5). However, the

*Outsource* case did not even involve a non-recruitment covenant and therefore made no such holding relating to such covenants. In fact, at issue in the *Outsource* case was a garden variety restrictive covenant that merely prohibited the defendant from (i) soliciting <u>customers</u>, (ii) divulging certain information concerning <u>customers</u>, (iii) disclosing certain confidential information relating to his former company, and (iv) operating a competing business in a certain geographic area. *Id.* at 665. The issue of whether defendant was allowed to hire employees of the company was not addressed in the contract at issue nor was it discussed anywhere in the Court's opinion. It is disingenuous at best and misleading at worst for RDC to suggest otherwise.[2]

Second, RDC suggests that Savad cited *YCA, LLC. V. Berry*, 2004 WL 1093385 (N.D. Ill. May 7, 2004), for the proposition that all non-recruitment covenants are unenforceable as a matter of law. (Response at 6). In reality, Savad cited that case noting that "the court decided that non-recruitment covenants are enforceable <u>only to the extent that they are narrowly drafted to guard an employer's confidential information from competitors</u>." (Savad's Opening Memorandum at 6) (emphasis added). Savad then noted that the court in *YCA* found the non-recruitment covenant in that case to be overbroad and thus unenforceable and that the covenant at issue in the instant case is also overbroad and unenforceable.

RDC responds to this argument by noting that the court in *YCA* reformed the overbroad restrictive covenant there to make it enforceable by limiting it to prohibit only the hiring of

---

[2] The same is true for *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill. App. 3d 557, 599 N.E.2d 1072 (1992), the case cited by the Court in *Outsource* and by RDC in its Response. (Response at 5). The issue of recruiting employees was not addressed in the restrictive covenant or in the Court's opinion. Instead, the restrictive covenant there prohibited the defendant from (i) providing services or communicating with <u>customers</u> during a certain period, (ii) engaging in the same business as the company for a certain time in a certain location, and (iii) disclosing information relating to her former company. *Id.* at 561, 599 N.E.2d at 1075.

7

employees who possess confidential business information. (Response at 9, n.1). RDC suggests that it also identified "the need to protect confidential business information" (Response at 6), and that therefore its restrictive covenant should be accorded the same treatment and be reformed if necessary (Response at 9, n.1). RDC is wrong again. The reason is that RDC only attributes knowledge of confidential information <u>to Savad</u> – not to either of the employees that Savad allegedly attempted to hire. In its Complaint, RDC alleges in detail that Savad, in his capacity as an officer of RDC, had access to RDC's confidential and proprietary information. (Complaint, ¶¶5-7). The concern over disclosure of confidential information, as alleged in RDC's Complaint, again relates to Savad, not RDC's employees. (Complaint, ¶27) ("[RDC] has no adequate remedy at law for its future economic losses ***in that <u>Savad</u> will continue disclosing [RDC's] confidential information to its competitor*** . . . .") (emphasis added). There are no such allegations regarding confidential information regarding the two RDC employees. To the contrary, RDC merely alleges in its Complaint that the two employees are "top flight Regional Sales Managers for the Company and are important for the Company's continued growth." (Complaint, ¶14). The alleged harm in hiring these employees as stated by RDC in Complaint has nothing to do with confidential information but rather consists of "robbing [RDC] of the substantial time, money and other resources it committed in recruiting and training its employees." (Complaint, ¶20). As previously discussed, "continued growth" and resources "committed in recruiting and training" employees are not interests that can be protected through restrictive covenants – such interests of course being limited under Illinois law to near permanent relations with customers and confidential information. Because RDC did not allege anywhere in its Complaint that the employees at issue possessed confidential information, limiting the

restrictive covenant to employees who possess confidential information would not help RDC state a cause of action under the facts specifically alleged in its Complaint.

Another misguided argument made by RDC in its Response is that this Court is bound by the decision of the Illinois Appellate Court in *Arpac Corp. v. Murray*, 226 Ill. App. 3d 65, 589 N.E.2d 640 (1992). (Response at 7). As even RDC acknowledges, decisions of the Illinois Appellate courts need not be followed "if there are persuasive indications that the Illinois Supreme Court would decide the issue differently." (Response at 7) (citing *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997)). That is exactly the situation here. In the *Unisource* case, cited by both parties to the instant action, the Federal District Court stated that *Arpac* represents a misapplication of Illinois law and specifically noted: "This Court is not bound by the Illinois appellate court's decision in *Arpac Corp.*, and believes that the Illinois Supreme Court . . . will support this Court's position." 244 F.Supp.2d at 983, n.2. In *YCA, LLC v. Berry*, *supra*, a Court in this District also refused to adopt the holding of *Arpac* as stated. Thus, RDC's contention that this Court is bound by the state court decision in *Arpac* falls flat.[3]

Finally, RDC argues that decisions regarding the enforceability of a restrictive covenant requires a fact intensive analysis such that they may never be made on a motion to dismiss. (Response at 8-9). While that may be true for many cases, it is not true in the instant case because the issue here is not a factual one as to whether the covenant is reasonable as to its duration and geographic restrictions, but rather is a legal issue concerning whether maintaining a stable work force is a protected interest under Illinois law. Since the issue is legal rather than

---

[3] RDC points to the unreported decision in *Malone v. CORT Furniture Corp.*, 2002 WL 1874819 (N.D. Ill. Aug. 13, 2002), in arguing that *Arpac* should be followed. (Response at 7). RDC reliance on this case is misplaced for two reasons. First, that decision came before both *Unisource* and *YCA*. Second, the opinion consists of only two pages and contains merely a citation to *Arpac* without the analysis found in *Unisource* and *YCA* as to whether *Arpac* was correctly decided.

factual in nature, the Court can easily decide the issue on a motion to dismiss without the need to engage in an onerous factual analysis.

### III. RDC DID NOT REQUEST THAT SAVAD'S COUNSEL ACCEPT SERVICE ON SAVAD'S BEHALF UNTIL AFTER THE INSTANT MOTION WAS FILED

In its Response, RDC notes that the issue of improper service is now moot, which is true, because Savad's counsel, at the request of RDC's counsel, agreed to accept service on behalf of Savad. Savad includes this short section in his reply because RDC suggests in its Response that Savad had previously rejected a request that his counsel accept service and only later relented. (Response at 2) ("Savad's counsel has now agreed to accept service on Savad's behalf.") (emphasis added). That suggestion is wrong and misleading. As stated in Savad's Opening Memorandum, RDC lured Savad from his residence in New York to Illinois under false pretenses and then served him with the Complaint using an improper method. At no time before improperly serving Savad or prior to the filing of Savad's motion to dismiss did RDC or its counsel ever request that Savad's counsel accept service on his behalf. It was only after Savad filed his motion to dismiss and shortly before RDC's response was due that RDC conceded its wrongful acts and for the first and only time asked if Savad's counsel would be willing to accept service on Savad's behalf. As a matter of professional courtesy and in order to conserve legal expenses and judicial resources, Savad's counsel agreed to this request by RDC's counsel to accept service. Therefore, as noted by RDC, the issue regarding service is now moot, but not for the misleading suggestion made by RDC.

## **CONCLUSION**

For the reasons stated above, as well as those stated in Savad's Opening Memorandum, RDC's Complaint should be dismissed in its entirety, and the Court should award Savad any further relief that the Court deems just and proper.

Dated:  June 30, 2008　　　　　　　　　　　　　　　　Steve Savad


　　　　　　　　　　　　　　　　　　　　　By:　s/  Steven E. Cyranoski
　　　　　　　　　　　　　　　　　　　　　　　　One of His Attorneys

Michael A. Stiegel
Steven E. Cyranoski
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 N. Stetson Ave., Suite 2000
Chicago, Illinois 60606
Phone: (312) 222-0800

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, hereby certifies that a copy of the foregoing Savad's Reply in Further Support of His Motion to Dismiss was served upon the following counsel via the Court's CM/ECF system on the 30th day of June 2008, before the hour of 5:00 p.m.:

<u>Attorney for Plaintiff</u>

Martin B. Carroll
mcarroll@fhslc.com
Travis B. Wolfinger
twolfinger@fhslc.com
Fox, Hefter, Swibel, Levin & Carroll, LLP
200 West Madison Street, Suite 3000
Chicago, Illinois 60606


                                              /s/ Steven E. Cyranoski