UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RESTAURANT.COM, INC, a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STEVE SAVAD, an individual residing in New York<br><br>　　　　　Defendant. | No. 08 CV 2978<br><br>Honorable Judge Aspen<br>Magistrate Judge Valdez |

**SAVAD'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant, Steve Savad, by and through his attorneys, Michael Best & Friedrich LLP, answers Plaintiff's Complaint as follows:

1.　Plaintiff, Restaurant.com, Inc. ("Restaurant.com" or "Company"), is a Delaware corporation which is engaged primarily in the business of restaurant marketing and promotions, restaurant information servicing and the sale of restaurant gift certificates to consumers and businesses for personal use, gifts and incentives. Restaurant.com's principal place of business is located in Arlington Heights, Illinois.

**ANSWER:** Savad admits the allegations contained in this paragraph.

2.　Defendant, Steve Savad ("Savad"), was one of the original founders of Retaurant.com, as well as an officer and director of the Company since 1998. He is a resident of New York, New York, and on information and belief is working with and/or for DiningFever.com in New York, a competitor of Restaurant.com as well as other competitors.

**ANSWER:** Savad admits that he was one of the original founders of Restaurant.com, as well as an officer and director of the Company since 1999. Savad also admits that he is a resident of New York, New York. Savad denies all remaining allegations contained in this paragraph.

3.　From the time Savad along with 3 other individuals founded the Company in 1998, he was intimately involved in the day to day operations of the Company and was familiar with, among other things, the Company's highly confidential information. Savad served in various high ranking positions with the Company, including serving as its Chief Financial Officer, Chief Operating Officer and Vice Chairman. Savad also served as a Director on the Company's Board of Directors from 1999 to 2007. Savad's employment was terminated by the Company in January 2008.

**ANSWER:** Savad admits that he founded the company in 1999 with two other individuals. He admits that he was involved in day to day operations of the Company. Savad further admits that he has served as Restaurant.com's Chief Financial Officer, as Chief Operating Officer and as Vice Chairman. Savad admits that he served as a Director on the Company's Board of Directors from 1999 to 2007. Savad admits that his employment was terminated by the Company in January 2008. Savad denies any remaining allegations contained in this paragraph.

4. In 2001, Savad entered into a three year employment contract with the Company, which, in part, was intended to protect Restaurant.com's confidential information and its relationships with both its employees and customers (the "Contract"). A copy of the Contract is attached as Exhibit A. The Contract expired by its own terms in 2004 and Savad stayed on with the Company as an at will employee until his employment was terminated in 2007.

**ANSWER:** Savad admits that he entered into a three year employment contract with the Company in 2001. Savad admits that a copy of the Contract is attached to the Complaint as Exhibit A. Savad admits that the Contract expired by its own terms in 2004 and that he stayed on with the Company as an at will employee until his employment was terminated in 2008. Savad denies any remaining allegations contained in this paragraph.

5. In his capacity as Chief Financial Officer, Chief Operating Officer and later as Vice Chairman, Savad had access to the Company's confidential and proprietary information, including information about its employees. Savad was aware of who were the strongest and weakest managers for Restaurant.com, how much they were paid, and which employees would be likely targets to try to recruit away from Restaurant.com. In short, Savad had access to all information regarding Restaurant.com's employees that someone from outside of the Company would not have.

**ANSWER:** Savad admits that in his capacity as Chief Financial Officer, Chief Operating Officer and Vice Chairman he had access to certain information relating to the Company. Savad further admits that he had information and opinions regarding certain employees of the Company. Savad denies the remaining allegations contained in this paragraph.

6. In his Contract, Savad acknowledged his position with Restaurant.com would give him access to its highly proprietary and confidential business information. Confidential information is defined by the Contract as, among other things, information regarding the employees of Restaurant.com and their "compensation or other terms of employment, actual or proposed promotions, … performance or other employee information."

**ANSWER**:  Savad states that the Contract speaks for itself and he denies any allegations contained in this paragraph that are inconsistent with the language contained in the Contract.

7. Due to the extensive and highly confidential information about the Company Savad had knowledge of in his position as Chief Financial Officer and Director, he was required by Restaurant.com to sign non-solicitation and confidentiality agreements, to prevent him from using this highly confidential and sensitive information to gain an unfair advantage in competing with the Company.

**ANSWER**:  Savad admits that he signed an Employment Agreement with Restaurant.com. Savad denies all remaining allegations contained in this paragraph.

8. Savad expressly agreed in the Contract not to solicit Restaurant.com's employees or customers for a period of one year after his employment with the Company ended. Section 7(c) of the Contract provides: "Executive [Savad] hereby agrees that, during the Restricted Period, he will not, directly or indirectly, for himself or on behalf of any other person, firm, entity or other enterprise: (i) solicit for purposes of providing products or services that are the same or substantially similar to that provided by the Corporation, or in any way divert or take away any person or entity that, prior to the date in question, was a client, customer, payor, referral source or facility of the Corporation or any of its affiliates; or (ii) hire, entice away or in any manner persuade any person who was an employee, consultant, representative or agent of the Corporation or any of its affiliates on or at any time within one (1) year prior to the date in question, to alter, modify or terminate their relationship with the Corporation or any of its affiliates."

**ANSWER**:  Savad admits that he agreed in the Contract not to solicit Restaurant.com customers for a certain period of time.  Savad admits that this paragraph accurately restates Section 7(c) of the Contract.  Savad denies all remaining allegations contained in this paragraph.

9. The "Restricted Period" is defined in Section 7(a) of the Contract as consisting of the period of Savad's employment with the Company and continuing for one year after his employment is terminated.

**ANSWER**:  Savad admits the allegations contained in this paragraph.

10. Section 7(h) expressly provides that the non-solicitation agreement continued even after the Contract ended in 2004:  "[t]he provisions of Section 7 of the Agreement shall survive the termination of this Agreement."

**ANSWER**:  Savad admits that Section 7(h) of the Contract provides:  "The provisions of Section 7 of this Agreement shall survive the termination of this Agreement."  Savad denies the remaining allegations contained in this paragraph.

11. Savad further agreed that, because of his access to Restaurant.com's confidential business information and his substantial experience with the Company, irreparable injury would result from his violation of his confidentiality and non-solicitation agreements contained in the Contract and that injunctive relief would be warranted in such an instance. (Ex. A, , ¶ 7(d)). Savad also expressly acknowledged and warranted that "the provisions of this Section 7 are enforceable against him in accordance with their terms."

**ANSWER:** Savad admits that the Contract provides that "the provisions of this Section 7 are enforceable against him in accordance with their terms." Savad denies that the remaining language in this paragraph accurately restates the provisions of Section 7(d) of the Contract.

12. The parties agreed in Section 14 that the Contract was to be governed by the laws of Illinois. Pursuant to the same Section, Savad additionally consented to "submit to personal jurisdiction in the State of Illinois in any state or federal court of competent jurisdiction situated in Cook County, Illinois."

**ANSWER:** Savad admits the allegations contained in this paragraph.

13. On information and belief, Savad recently began working with and/or for DiningFever.com, a direct competitor of Restaurant.com as well as other competitive ventures. Subsequent to leaving Restaurant.com, Savad has repeatedly violated his non-solicitation agreement by attempting to lure away the Company's top Regional Sales Managers to go work for DiningFever.com. In addition to violating the express terms of his non-solicitation agreement, Savad has made such prohibited solicitations despite the fact that he was also aware that the employees he solicited had entered into non-compete agreements with Restaurant.com that prohibits them for working for a competitor of the Company for one year after they leave its employ.

**ANSWER:** Savad denies the allegations contained in this paragraph.

14. Restaurant.com has discovered that Savad has improperly personally solicited at least two of its employees, Jordan Vazquez and James Carso, both of whom are top flight Regional Sales Managers for the Company and are important for the Company's continued growth.

**ANSWER:** Savad denies the allegations contained in this paragraph.

15. On March 25, 2008, Savad approached Vasquez in New York and told him he was working for DiningFever.com. Savad offered Vasquez a position as a Vice President with DiningFever.com and asked Vasquez to approach his entire sales team at Restaurant.com and convince them to all leave the Company and join his new company.

**ANSWER:** Savad denies the allegations contained in this paragraph.

16. Two days later Savad contacted Vasquez again in an effort to convince him to leave Restaurant.com and join him. Savad repeatedly sent text messages to Vasquez over the next few days encouraging him to leave Restaurant.com. On April 2, 2008, Savad called Vasquez and asked him again to join him and further asked who on his sales team would join him if he left the Company.

**ANSWER:**  Savad denies the allegations contained in this paragraph.

17. Vasquez then told Savad that he was not interested in joining him and that he had a non-compete agreement that prevented him from working for a competitor of the Company. The next day Savad sent Vasquez a text message that his company was willing to pay Vasquez six months of compensation upfront if he joined DiningFever.com and he had received the approval of his financial backers to make such an offer.

**ANSWER:**  Savad admits the first sentence of this paragraph. Savad admits that he sent Vasquez a text message concerning potential future opportunities but denies the remaining allegations contained in this paragraph.

18. During this same time period, Savad also improperly solicited another of Restaurant.com's Regional Sales Managers, James Carso. Carso received a text message from Savad telling him that he had an interesting opportunity for him and wanted to set a meeting between Carso and Chris Bollenbach to talk about the DiningFever.com opportunity. After Carso met with Bollenbach and discussed the possibility of his joining Savad's venture, Savad called Carso the next day. During that conversation Savad explained to Carso how DiningFever.com operates and Savad asked Carso what it would take monetarily for him to leave Restaurant.com and go to work for his new company. Savad also told Carso he would receive equity in the company and further discussed the general parameters of his expected compensation, insurance, expense accounts and travel issues. Savad informed him that Carso would need to relocated to Las Vegas, Nevada once he came to work for his company. Carso declined Savad's solicitation.

**ANSWER:**  Savad admits that he and Chris Bollenbach had discussions with James Carso regarding potential future opportunities. Savad admits that Carso stated he was not interested in such opportunities. Savad denies the remaining the allegations contained in this paragraph.

19. On information and belief, Savad may have solicited other of Restaurant.com's employees.

**ANSWER:**  Savad denies the allegations contained in this paragraph.

20. Savad's continued blatant violation of his non-solicitation agreement will cause irreparable injury to Restaurant.com by robbing it of the substantial time, money and other resources it committed in recruiting and training its employees. Restaurant.com has no way of knowing which other of its employees Savad is improperly attempting to solicit from its employment.

**ANSWER:**  Savad denies the allegations contained in this paragraph.

21. Restaurant.com has no adequate remedy at law to protect it from Savad's improper solicitation of its employees and misappropriation of its confidential information and restraint by injunction is necessary to afford it adequate relief.

**ANSWER:**  Savad denies the allegations contained in this paragraph.

## COUNT I

### (Breach of Contract)

22. Restaurant.com repeats and alleges the allegations of paragraphs 1 through 21.

**ANSWER:** Savad restates his answers to paragraphs 1 through 21 as his answer to this paragraph.

23. Restaurant.com has fulfilled all of its obligations under the Contract.

**ANSWER:** The allegations in this paragraph are legal conclusions for which no answer is required. Moreover, the terms of the Contract speak for themselves. To the extent an answer is required, Savad denies the allegations in this paragraph.

24. Pursuant to the Contract, Savad agreed not to solicit any employees or customers of Restaurant.com for one year after his employment with Restaurant.com terminated.

**ANSWER:** Savad denies the allegations contained in this paragraph.

25. Savad has repeatedly solicited employees of Restaurant.com since his employment with the Company ended in January 2008, in clear violation of the terms of his non-solicitation agreement with the Company.

**ANSWER:** Savad denies the allegations contained in this paragraph.

26. As a result of Savad's actions, Restaurant.com has been and will be irreparably harmed by the loss of any of its employees and the disclosure to its competitor of its confidential information, and will be further and irreparably harmed if Savad continues his actions.

**ANSWER:** Savad denies the allegations contained in this paragraph.

27. Restaurant.com has no adequate remedy at law for its future economic losses in that Savad will continue disclosing Restaurant.com's confidential information to its competitor thereby assisting it in taking away employees and potentially customers from Restaurant.com, forcing Restaurant.com to repeatedly commence judicial proceedings to protect its interests. In addition, Restaurant.com has no ability to reasonably calculate its future monetary damages due to Savad's actions.

**ANSWER:** Savad denies the allegations contained in this paragraph.

28. In Section 7 of his Contract, Savad acknowledged that if he violated the confidentiality and non-solicitation covenants, Restaurant.com would be entitled to injunctive relief.

**ANSWER:** Savad admits the allegations contained in this paragraph.

29. Pursuant to Section 13 of the Contract, if any action is filed to enforce or interpret the terms of the Contract, including the non-solicitation and confidentiality agreements, the prevailing party is entitled to recover its attorneys' fees and costs incurred in such action.

**ANSWER:** Savad denies the allegations contained in this paragraph.

30. The Court should extend Savad's one year non-solicitation period by any time in which he has been found to be in violation of his non-solicitation agreement with Restaurant.com.

**ANSWER:** Savad denies the allegations contained in this paragraph.

## Affirmative Defenses

1. Plaintiff fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred by the doctrine of unclean hands.

WHEREFORE, Savad requests that this Court dismiss this Complaint in its entirety and enter judgment in his favor and against Restaurant.com.

Dated: September 5, 2008                                    Steve Savad

                                                            By:    s/ Steven E. Cyranoski
                                                               One of His Attorneys

Michael A. Stiegel
Steven E. Cyranoski
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 N. Stetson Ave., Suite 2000
Chicago, Illinois 60606
Phone: (312) 222-0800

**CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies that a copy of the foregoing Savad's Answer and Affirmative Defenses to Plaintiff's Complaint was served upon the following counsel via the Court's CM/ECF system on the 5th day of September 2008, before the hour of 5:00 p.m.:

Attorney for Plaintiff

Martin B. Carroll
mcarroll@fhslc.com
Travis B. Wolfinger
twolfinger@fhslc.com
Fox, Hefter, Swibel, Levin & Carroll, LLP
200 West Madison Street, Suite 3000
Chicago, Illinois 60606

                                                /s/ Steven E. Cyranoski